UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RANI CROSHAL, an individual; and BRADLEY CROSHAL, an individual, | Case No:  C 13-05435 SBA |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| vs. | Docket 16 |
| AURORA BANK, F.S.B.; NATIONSTAR MORTGAGE; U.S. BANK; and Does 1 through 100, inclusive, | |
| Defendants. | |

The parties are presently before the Court on Defendant Nationstar Mortgage LLC's ("Nationstar")[1] motion to dismiss the first amended ("FAC") complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. 16.  Plaintiffs Rani and Bradley Croshal (collectively, "Plaintiffs") oppose the motion.  Dkt. 18.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART AND DENIES IN PART Nationstar's motion to dismiss, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.    **BACKGROUND**

Plaintiffs are the owners of real property located at 535-537 Ivy Street, San Francisco, CA 94102 ("the property").  FAC ¶¶ 2, 10.  On or about April 13, 2007, Plaintiffs and GreenPoint Mortgage Funding, Inc. ("GreenPoint") entered into a loan

---

[1] Nationstar was erroneously sued as Nationstar Mortgage.  Nationstar is the successor-in-interest to Aurora Bank, FSB and U.S. Bank, N.A., erroneously sued as U.S. Bank.

agreement for the purchase of the property, secured by a Deed of Trust.  Id. ¶ 11.  On or around July 17, 2007, GreenPoint sold the loan and all beneficial interest thereunder to Aurora Loan Services, LLC ("Aurora Loan Services").  Id. ¶ 12.

In or around July 2011, Aurora Loan Services sold Plaintiffs' loan and all beneficial interest thereunder to Aurora Bank, FSB ("Aurora").  FAC ¶ 15.  At this time, Plaintiffs' monthly payments nearly doubled.  Id.  Due to the drastic increase in their monthly payment, Plaintiffs inquired about a loan modification.  Id.  In or around July 2011, Plaintiffs submitted their first loan modification application.  Id. ¶ 16.  For nearly a year thereafter, Aurora required Plaintiffs to submit and resubmit countless documents.  Id.

On or around June 26, 2012, Plaintiffs received a "long-awaited" Repayment Agreement from Aurora, which was signed by an Aurora "CRM-SPOC Supervisor" named Jesse Bainter.[2]  FAC ¶¶ 17-18, Exh. A.  Pursuant to the Repayment Agreement, Plaintiffs were required to pay their arrears over a twelve-month period.  Id. ¶ 18.  After doing so, the agreement provided that Plaintiffs' arrearage would be brought current and they would receive a monthly billing statement reflecting the current status of the loan and their regular monthly payment amount.  Id.  According to Plaintiffs, immediately after receiving the Repayment Agreement, they attempted to contact Aurora to inquire about how to submit their first payment.  Id. ¶ 19.  Aurora's phone system, however, advised Plaintiffs to contact Nationstar if they needed assistance.  Id.

"At this time," Plaintiffs learned that their loan had been transferred from Aurora to U.S. Bank, N.A.  FAC ¶ 20.  Plaintiffs also learned that Nationstar would be the new servicer of their loan.  Id.  Because Plaintiffs were interested in making their first payment under the Repayment Agreement, they contacted Nationstar by telephone regarding the "fully executed" agreement.  Id.  During this conversation, Nationstar told Plaintiffs that it would not honor the Repayment Agreement and that Plaintiffs would need to submit a new

---

[2] A review of the Repayment Agreement reveals that the agreement does not contain a handwritten signature from an Aurora representative.  Rather, the agreement contains a typewritten signature from an Aurora representative named Jesse Bainter.

loan modification application.  Id. ¶ 21.  Plaintiffs were "disheartened," but immediately submitted a new loan modification application to Nationstar.  Id.  According to Plaintiffs, "[w]hat followed was another year of being required to submit and resubmit countless documents to no avail."  Id. ¶ 22.

In January 2013, while Plaintiffs loan modification application was under review, they asked Nationstar to give them a single point of contact.  FAC ¶ 23.  While Nationstar purported to provide them with a single point of contact, an individual named Cheryl Flora, Plaintiffs were never able to communicate with Ms. Flora.  Id.  Instead, they were transferred to a different individual every time they contacted Nationstar.  Id.  Nevertheless, Plaintiffs continued to comply with all of Nationstar's requests.  Id.  However, in or around August 2013, while Plaintiffs' loan modification application was still under review, Nationstar caused a Notice of Default to be recorded.  Id.  It is undisputed that a Notice of Trustee's Sale has not been recorded.

## II.   **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the

1  complaint as true and construe the pleadings in the light most favorable to the nonmoving

2  party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 900 (9th Cir.

3  2007).  However, "the tenet that a court must accept as true all of the allegations contained

4  in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

5  cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 563 U.S.

6  at 678.  "While legal conclusions can provide the complaint's framework, they must be

7  supported by factual allegations." Id. at 679.  Those facts must be sufficient to push a claim

8  "across the line from conceivable to plausible." Id. at 683.  Ultimately, the allegations must

9  "give the defendant fair notice of what the . . . claim is and the grounds upon which it

10 rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

11        Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless

12 the district court determines that the pleading could not possibly be cured by the allegation

13 of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

14 Leave to amend is not required where permitting further amendment to the pleadings would

15 be futile.  See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-1050 (9th

16 Cir. 2006).

17 **III.**    **DISCUSSION**

18        **A.**    **Judicial Notice**

19        In connection with the instant motion, Nationstar filed a request for judicial notice

20 under Rule 201 of the Federal Rules of Evidence.  Nationstar requests the Court take

21 judicial notice of the following documents:  (1) Deed of Trust, dated April 4, 2007 and

22 recorded in San Francisco County on April 13, 2007; (2) Corporate Assignment of Deed of

23 Trust, dated September 14, 2012 and recorded in San Francisco County on February 21,

24 2013; (3) Substitution of Trustee, recorded in San Francisco County on July 10, 2013; (4)

25 Notice of Default, recorded in San Francisco County on July 16, 2013; (5) Notice of

26 Rescission of Notice of Default, recorded in San Francisco County on August 27, 2013; and

27 (6) Notice of Default, recorded in San Francisco County on August 27, 2013.   Dkt. 17.

28 Plaintiffs do not oppose Nationstar's request.

A court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed.R.Evid. 201(b).  Here, because a court may take judicial notice of matters of public record, Nationstar's unopposed request for judicial notice is GRANTED.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (on a motion to dismiss, court may consider matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss); W. Fed. Sav. v. Heflin, 797 F.Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county public record, including deeds of trust).

### B.    Motion to Dismiss

The FAC alleges four claims for relief:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of Civil Code § 2923.55; and (4) violation of California Business and Professions Code § 17200, et seq. ("UCL").  See FAC.  Nationstar now moves to dismiss these claims under Rule 12(b)(6).  Nationstar's arguments are discussed below.

#### 1.    Tender Rule

Nationstar contends that dismissal of the claims alleged in the FAC is warranted because Plaintiffs have failed to allege a valid tender of their debt.  According to Nationstar, since Plaintiffs have failed to allege a valid tender, they lack standing to assert any claim attacking the validity of the foreclosure process.

While a debtor is typically required to allege a valid tender as a precondition of challenging a foreclosure sale, Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. 2009) (Armstrong, J.), Nationstar has not demonstrated that the tender rule applies to any of the claims alleged in the FAC.  The "tender rule" generally applies in an action to set aside a trustee's sale for procedural irregularities or alleged deficiencies in the sale notice. Tamburri v. Suntrust Mortg., Inc., 2011 WL 6294472, at *3 (N.D. Cal. 2011).  "[T]he

1    rationale behind the rule is that if plaintiffs could not have redeemed the property had the

2    sale procedures been proper, any irregularities in the sale did not result in damages to the

3    plaintiffs." Id.

4            The Court finds that Nationstar has failed to demonstrate that dismissal of the FAC

5    is warranted under the tender rule.  Nationstar has not cited any authority establishing that a

6    valid tender is required to prosecute the claims alleged in the FAC.  Indeed, Plaintiffs'

7    claims for breach of contract and breach of the implied covenant of good faith and fair

8    dealing are not predicated on "irregularities" in the foreclosure process or alleged

9    deficiencies in the sale notice.  Rather, these claims are predicated on Nationstar's failure to

10   honor the Repayment Agreement.  Moreover, courts have held that an offer of tender is not

11   required to state an actionable claim under § 2923.55.  See Mabry v. Superior Court, 185

12   Cal.App.4th 208, 225 (2010) ("The whole point of section 2923.5 [the predecessor of §

13   2923.55] is to create a new, even if limited right, to be contacted about the possibility of

14   alternatives to full payment of arrearages.  It would be contradictory to thwart the very

15   operation of the statute if enforcement were predicated on full tender."); see also Perez v.

16   American Home Mortg. Servicing, Inc., 2012 WL 1413300, at *5 (N.D. Cal. 2012).[3]

17   Accordingly, Nationstar's motion to dismiss the FAC pursuant to the tender rule is

18   DENIED.

19              **2.      Breach of Contract**

20           Nationstar contends that dismissal of Plaintiffs' breach of contract claim is

21   warranted because Plaintiffs have failed to establish the existence of a valid and

22   enforceable contract.  Specifically, Nationstar argues that Plaintiffs have not attached a

23   copy of a fully executed agreement to the FAC or alleged sufficient facts establishing that a

24   fully executed and valid contract exists.  In addition, Nationstar argues that Plaintiffs have

25   failed to plead facts establishing "full acceptance" of the Repayment Agreement.

26

27         [3] As discussed below, Plaintiffs' § 17200 claim is derivative of their other claims for
     relief.  Therefore, because a valid tender is not a precondition to prosecute Plaintiffs' other
28   claims for relief, it is not a precondition to prosecute their § 17200 claim.

In California, the elements of a claim for breach of contract are:  (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff.  <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal.4th 811, 821 (2011).  To satisfy the first element—the existence of a contract—a plaintiff must show offer, acceptance, and consideration.  <u>See</u> <u>Hecimovich v. Encinal Sch. Parent Teacher Org.</u>, 203 Cal.App.4th 450, 474-475 (2012).  In satisfying that first element, a party may plead a written contract "either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect."  <u>McKell v. Wash. Mut., Inc.</u>, 142 Cal.App.4th 1457, 1489 (2006).

California Civil Code § 1550 provides that a contract exists when there are:  (1) parties capable of contracting; (2) the parties give their consent; (3) there is a lawful object; and (4) there is sufficient cause or consideration.  <u>Donovan v. RRL Corp.</u>, 26 Cal.4th 261, 270 (2001).  An essential element of any contract is the consent of the parties, or mutual assent.  <u>Id.</u>  Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.  <u>Id.</u> at 270-271.

Here, the FAC alleges that, on or around June 26, 2012, Plaintiffs received a Repayment Agreement from Aurora, the terms of which are set forth in Exhibit A to the FAC.  FAC ¶¶ 16-17, Exh. A.  The Repayment Agreement states that "Borrower(s) have requested and Lender has agreed to allow Borrower(s) to repay the Arrearage pursuant to a repayment plan on the terms set forth herein."  <u>Id.</u>, Exh. A.  Under the terms of the Repayment Agreement, Plaintiffs were required to pay their arrears over a twelve-month period and, after doing so, their arrearage would be "brought current" and they would receive a monthly billing statement reflecting the current status of the loan and their regular monthly payment.  <u>Id.</u> 19, 31, Exh. A.  According to Plaintiffs, the Repayment Agreement was signed by Aurora - specifically, a "CRM-SPOC Supervisor" named Jesse Bainter - and was fully executed.  <u>Id.</u> ¶ 32.  Plaintiffs allege that, upon receipt of the Repayment Agreement, they "immediately" contacted Aurora to inquire about how to submit their first

payment; however, Aurora prevented them from performing under the agreement by transferring all interest in their loan and the agreement[4] to Nationstar.  Id. ¶¶ 19, 32-33, 39. Plaintiffs further allege that they subsequently contacted Nationstar and informed it about the fully executed Repayment Agreement with Aurora.  Id. ¶ 21.  During this conversation, Plaintiffs inquired about how to submit their first payment.  Id.  Nationstar, however, told Plaintiffs that it would not honor the Repayment Agreement, and that they would need to submit a new loan modification application.  Id. ¶¶ 21, 33-34, 40.  According to Plaintiffs, Nationstar breached the terms of the Repayment Agreement by refusing to honor it, thereby causing them to suffer damages in the form of, among other things, increased late fees, increased arrears, and credit damage.  Id. ¶ 35.

The Court finds that Nationstar has failed to demonstrate that dismissal of Plaintiffs' breach of contract claim is warranted.  As an initial matter, the fact that Plaintiffs did not sign and return the Repayment Agreement attached to the FAC does not make the agreement unenforceable.  See Performance Plastering v. Richmond American Homes of California, Inc., 153 Cal.App.4th 659, 668 (2007) ("[T]he lack of a party's signature does not make a fully executed contract unenforceable.").  Under California law, "a contract is invalid if not signed by all parties purportedly bound [o]nly when it is shown, either by parol or express condition, that the contract was not intended to be complete until all parties had signed.  Conversely, in the absence of a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound."  Angell v. Rowlands, 85 Cal.App.3d 536, 542 (1978).  Here, the Repayment Agreement is signed by an Aurora representative and does not contain an express condition providing that it is not complete until all parties have signed it.  Nationstar, for its part, has not shown that the Repayment Agreement was not intended to be complete until signed by all the parties. Further, Nationstar has not argued, let alone demonstrated, that it is not bound by the Repayment Agreement as the successor-in-interest to Aurora.  Nor has Nationstar shown

---

[4] Plaintiffs do not identify the specific date when Aurora transferred all interest in their loan to Nationstar.

1   that the Repayment Agreement is unenforceable because it contains a typewritten signature

2   from an Aurora representative instead of a handwritten signature.  While Nationstar

3   suggests that the agreement is unenforceable because it lacks a handwritten signature from

4   an Aurora representative, it failed to cite any authority supporting such a proposition.  As

5   such, Nationstar has failed to demonstrate that dismissal of Plaintiffs' breach of contract

6   claim is appropriate on this basis.

7          Finally, to the extent Nationstar argues that the Repayment Agreement is

8   unenforceable because Plaintiffs have failed to allege facts establishing acceptance, the

9   Court disagrees.  Plaintiffs allege that they contacted Nationstar by telephone shortly after

10  receiving the Repayment Agreement and learning that Nationstar was the successor-in-

11  interest to Aurora.  During this conversation, Plaintiffs asked Nationstar about how to make

12  their first payment under the agreement.  Viewing the allegations in the FAC in the light

13  most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged conduct

14  that manifested an intent to accept the Repayment Agreement.  The mutual assent necessary

15  for the formation of a contract need not be demonstrated by a signature, but may be

16  manifested by an act or omission demonstrating consent.  <u>E.O.C. Ord, Inc. v. Kavakovich</u>,

17  200 Cal.App.3d 1194, 1201-1202 (1988) (concluding that defendant manifested his

18  acceptance to the writing when he orally agreed to its terms in the parties' subsequent

19  telephone conversation); <u>see</u> <u>Bernard v. Walkup</u>, 272 Cal.App.2d 595, 602 (1969) ("It is

20  well established that the receipt and acceptance by one party of a writing signed by the

21  other only, and purporting to embody all the terms of a contract between the two, binds the

22  acceptor as well as the signor to the terms of the writing."); Cal. Civ. Code § 3388 (party

23  who has signed a written contract may be compelled to specifically perform it, though the

24  other party has not signed it, if the other party offers to perform it on his part).

25  Accordingly, Nationstar's motion to dismiss Plaintiffs' first claim for relief is DENIED.

26          **3.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

27          Nationstar contends that dismissal of Plaintiffs' claim for breach of the implied

28  covenant of good faith and fair dealing is warranted because Plaintiffs have failed to allege

1  the existence of a valid contract.  In addition, Nationstar contends that dismissal of this

2  claim is warranted because Plaintiffs have failed to allege sufficient facts establishing

3  "unfair interference" with their right to receive the benefits of the Repayment Agreement.

4          "There is an implied covenant of good faith and fair dealing in every contract that

5  neither party will do anything which will injure the right of the other to receive the benefits

6  of the agreement."  Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal.4th 390,

7  400 (2000) (quotation marks omitted).  This covenant exists to "prevent one contracting

8  party from unfairly frustrating the other party's right to receive the benefits of the

9  agreement actually made."  Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 349-350 (2000).  "A

10  plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing

11  must allege the following elements:  (1) the existence of a contract; (2) the plaintiff did all,

12  or substantially all of the significant things the contract required; (3) the conditions required

13  for the defendant's performance had occurred; (4) the defendant unfairly interfered with the

14  plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by

15  the defendant's conduct.  Woods v. Google, Inc., 889 F.Supp.2d 1182, 1194 (N.D. Cal.

16  2012); Oculus Innovative Sciences, Inc. v. Nofil Corp., 2007 WL 2600746, at *4 (N.D. Cal.

17  2007).

18          "[B]reach of the implied covenant of good faith and fair dealing involves something

19  beyond breach of the contractual duty itself."  Tilbury Constructors, Inc. v. State

20  Compensation Ins. Fund, 137 Cal.App.4th 466, 474 (2006) (internal quotation marks and

21  citation omitted).  To support a claim for breach of the implied covenant, the allegations:

22          Must show that the conduct of the defendant, whether or not it also
        constitutes a breach of a consensual contract term, demonstrates a failure or
23          refusal to discharge contractual responsibilities, prompted not by an honest
        mistake, bad judgment or negligence but rather by a conscious and deliberate
24          act, which unfairly frustrates the agreed common purposes and disappoints
        the reasonable expectations of the other party thereby depriving that party of
25          the benefits of the agreement.

26  Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1395 (1990).  "If the

27  allegations do not go beyond the statement of a mere contract breach and, relying on the

28  same alleged acts, simply seek the same damages or other relief already claimed in a

1   companion contract cause of action, they may be disregarded as superfluous as no

2   additional claim is actually stated." <u>Id.</u>

3       The Court, for the reasons discussed above, rejects Nationstar's contention that

4   dismissal of this claim is appropriate because Plaintiffs have failed to allege the existence

5   of a valid contract.  However, the Court finds that dismissal of this claim is warranted

6   because the FAC does not allege conduct that goes beyond the statement of a breach of

7   contract and, relying on the same acts that form the basis of the breach of contract claim,

8   seeks the same relief already claimed for the breach of contract claim.  <u>See</u> FAC ¶¶ 32-35,

9   40-42.  Plaintiffs have not alleged any facts showing that Nationstar unfairly interfered with

10  their right to receive the benefits of the Repayment Agreement.  Plaintiffs simply allege

11  that Nationstar interfered with their right to receive the benefits of the Repayment

12  Agreement (i.e., the reinstatement of their loan) by refusing to honor the loan agreement,

13  including refusing to accept loan payments.  <u>Id.</u> ¶¶ 40-41.  However, Plaintiffs do not allege

14  that Nationstar did so "not by an honest mistake, bad judgment, or negligence, but rather by

15  a conscious and deliberate act."  <u>Careau</u>, 222 Cal.App.3d at 1395.  Accordingly, because

16  Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is

17  superfluous to their breach of contract claim, Nationstar's motion to dismiss Plaintiffs'

18  second claim for relief is GRANTED with leave to amend.

19              **4.     Civil Code § 2923.55**

20      Plaintiffs allege that Nationstar has admitted that it did not comply with the

21  requirements of § 2923.55 because the declaration attached to the August 2013 Notice of

22  Default states that § 2923.55 does not apply as "the loan encumbering the . . . property is

23  not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that

24  encumbers real property."  FAC ¶¶ 45-46.  According to Plaintiffs, contrary to the

25  declaration attached to the August 2013 Notice of Default, § 2923.55 applies to their loan

26  because it is a first-lien deed of trust that encumbers real property.  <u>Id.</u>  Nationstar, for its

27  part, contends that dismissal of this claim is appropriate because it is predicated on the July

28  2013 Notice of Default, not the operative August 2013 Notice of Default.  Although not

1  entirely clear, Nationstar appears to argue that the August 2013 Notice of Default includes

2  a declaration attesting that Nationstar has complied with the requirements of §

3  2923.55(b)(2).

4        Section 2923.55 requires a mortgage servicer to contact the borrower to assess the

5  borrower's financial situation, to explore options of avoiding foreclosure, and to provide

6  other information.  Cal. Civ. Code § 2923.55(b)(2).  "A notice of default recorded pursuant

7  to Section 2924 shall include a declaration that the mortgage servicer has contacted the

8  borrower, has tried with due diligence to contact the borrower as required by this section, or

9  that no contact was required because the individual did not meet the definition of

10  'borrower' pursuant to subdivision (c) of Section 2920.5."  Cal. Civ. Code § 2923.55(c).

11  The only relief available for a violation of § 2923.55 is the postponement of a foreclosure

12  sale until there has been compliance with the statute.  See Mabry, 185 Cal.App.4th at 221,

13  235.

14        The Court rejects Nationstar's suggestion that dismissal of this claim is appropriate

15  because the August 2013 Notice of Default satisfies the requirements of § 2923.55(c).  In

16  its request for judicial notice, Nationstar submitted a copy of the August 2013 Notice of

17  Default.  Def.'s RJN, Exh. F.  However, there is no declaration attached to this document as

18  required by § 2923.55(c).  Accordingly, Nationstar's motion to dismiss Plaintiffs' third

19  claim for relief is DENIED.  That aside, the Court, sua sponte, finds that dismissal of this

20  claim is appropriate because it is unripe for adjudication.[5]  It is undisputed that a Notice of

21  Trustee's Sale has not been recorded.  Therefore, because there is no trustee's sale to

22  postpone, Plaintiffs' claim is unripe.  See Caceres v. Bank of America, N.A., 2013 WL

23  7098635, at *4 (C.D. Cal. 2013); see also In re Sandri, 501 B.R. 369, 378 (N.D. Cal. 2013)

24  (dismissing claim because there was no pending foreclosure sale to postpone as no notice of

25  sale had been recorded).  Accordingly, Plaintiff's third claim for relief is DISMISSED.  In

26  _____

27  [5] "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."  Southern Pacific Transp. Co. v. Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).  "This issue may be raised sua sponte if not raised by the parties.  Id. at

28  502.

1   the event that a Notice of Trustee's sale is recorded and a trustee's sale is scheduled,

2   Plaintiffs may seek leave to add a claim alleging a violation of § 2923.55.

3              **5.**     **UCL Claim**

4        Nationstar contends that dismissal of Plaintiffs' UCL claim is warranted because the

5   allegations in the FAC do not demonstrate that Plaintiffs have suffered an injury in fact or

6   lost money or property as a result of Nationstar's unfair competition.  In addition,

7   Nationstar contends that dismissal of this claim is warranted because Plaintiffs have failed

8   to allege facts showing a violation of any predicate law that would give rise to a claim

9   under the UCL.

10       The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair

11   or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  " 'Section 17200

12   'borrows' violations of other laws and treats them as unlawful practices' that the unfair

13   competition law makes independently actionable."  Cel-Tech Comm., Inc. v. Los Angeles

14   Cellular Tel. Co., 20 Cal.4th 163, 180 (1999); see Durell v. Sharp Healthcare, 183

15   Cal.App.4th 1350, 1361 (2010) ("Virtually any law—federal, state or local—can serve as a

16   predicate for an action under . . . section 17200.") (internal quotation marks and citations

17   omitted); Saunders v. Superior Court, 27 Cal.App.4th 832, 838-839 (1994) (where a

18   business act or practice violates any law, that violation is actionable under the UCL,

19   regardless of whether the predicate law itself contains a private right of action).  To state a

20   claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient

21   to show a violation of some underlying law.  People v. McKale, 25 Cal.3d 626, 635 (1979);

22   see People ex rel. Harris v. Pac Anchor Transp., Inc., 195 Cal.App.4th 765, 773 (2011)

23   ("An 'unlawful' business practice or act within the meaning of the UCL 'is an act or

24   practice, committed pursuant to business activity, that is at the same time forbidden by

25   law.' ").  Further, in order to bring a UCL claim, a plaintiff must have "suffered injury in

26   fact" and "lost money or property as a result of the unfair competition."  Cal. Bus. & Prof.

27   Code § 17204.

28

1    Here, because Plaintiffs' UCL claim is wholly derivative of their other claims for

2    relief,[6] dismissal of this claim is appropriate to the extent that it is predicated on a breach of

3    the implied covenant of good faith and fair dealing.  As discussed above, Plaintiffs have

4    failed to state an actionable claim for relief under this theory.  Moreover, to the extent that

5    this claim is predicated on Plaintiffs' breach of contract and breach of the implied covenant

6    of good faith and fair dealing claims, it fails as a matter of law.  A common law violation is

7    insufficient to establish a violation of the unlawful prong of the UCL.  See Shroyer v. New

8    Cingular Wireless Services, Inc., 622 F.3d 1035, 1044 (9th Cir. 2010) ("a common law

9    violation such as breach of contract is insufficient" to establish a claim under the unlawful

10   prong of the UCL); see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 319

11   F.Supp.2d 1059, 1074-1075 (C.D. Cal. 2003).

12       Finally, to the extent this claim is predicated on a violation of § 2923.55, Plaintiffs

13   lack standing to prosecute it.  To establish standing under the UCL, a plaintiff must "(1)

14   establish a loss or deprivation of money or property sufficient to qualify as injury in fact,

15   i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused

16   by*, the [unfair competition]. . . ."  Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322

17   (2011) (emphasis in original).  Here, Plaintiffs have not alleged facts establishing an

18   economic injury that was caused by Nationstar's failure to abide by § 2923.55, i.e., that

19   they lost money or property as a result of Nationstar's unlawful business practice.

20   Plaintiffs allege that, "[a]s a result of Defendants' wrongful conduct [i.e., violation of §

21   2923.55], [they] have suffered various injuries according to proof at trial, including but not

22   limited to the destruction of their credit" and the "imminent loss" of their property.  FAC ¶¶

23   47, 53-54.  Plaintiffs, however, have not alleged any facts establishing that they would have

24   avoided default had Nationstar complied with the requirements of § 2923.55.  Indeed, it is

25   undisputed that the parties were in contact regarding alternatives to foreclosure from

26

27       [6] In their opposition, Plaintiffs' concede that their UCL claim is limited to the
     unlawful prong of the UCL.  See Pls.' Opp. at 10 ("Plaintiffs' UCL claim is tethered to
28   [Nationstar's] violations of California law as set forth in the FAC.").

approximately June 2012 to June 2013.[7]  See FAC ¶¶ 18-23.  The fact that Nationstar did

not offer Plaintiffs a loan modification providing relief from default is not the result of

Nationstar's failure to contact Plaintiffs before causing a Notice of Default to be recorded

in August 2013.  Accordingly, Nationstar's motion to dismiss Plaintiffs' fourth claim for

relief is GRANTED with leave to amend.

**IV.    CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.     Nationstar's motion to dismiss is GRANTED IN PART AND DENIED IN

PART.  Nationstar's motion to dismiss is denied as to Plaintiffs' breach of contract claim

and claim for a violation of § 2923.55.  Nationstar's motion to dismiss is granted as to

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing with

leave to amend.  Plaintiffs' claim for a violation of § 2923.55 is DISMISSED by the Court

sua sponte as unripe.  In the event that a Notice of Trustee's Sale is recorded and a trustee's

sale is scheduled, Plaintiffs may seek leave to amend to add a claim alleging a violation of

§ 2923.55.  Nationstar's motion to dismiss Plaintiffs' UCL claim is granted with leave to

amend.

2.     Plaintiffs may file a second amended complaint within twenty-one (21) days

from the date this Order is filed.  Plaintiffs shall not amend their complaint to add any new

claims absent prior leave of Court.

3.     This Order terminates Docket 16.

IT IS SO ORDERED.

Dated:  6/19/2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

[7] The allegations in the FAC suggest that Nationstar satisfied the substantive obligation imposed by § 2923.55.  The "obvious" goal of § 2923.55 is to force the parties to "*communicate* . . . about a borrower's situation and the options to avoid foreclosure. . . ." Mabry, 185 Cal.App.4th at 224 (emphasis in original).  "[T]he substantive obligation it imposes on lenders . . . basically says that a lender cannot file a notice of default until the lender has contacted the borrower in person or telephone."  Id. at 221 (internal quotation marks omitted).